THE JEFFERSON.[1]

FLAKE and others *v.* THE JEFFERSON.

(*Circuit Court, E. D. Texas.* March, 1887.)

1. SHIPPING—CARRIERS—LOSS BY LEAKAGE AND BREAKAGE—BURDEN OF PROOF.
   A carrier is released by his contract from all liability for loss from leakage and breakage, when so stipulated, unless his negligence or misconduct co-operated in the loss. The burden of proof is upon the shipper to show such contributory or co-operating negligence. *National Bureau of Engraving* v. *The New Orleans*, 26 Fed. Rep. 44, followed.

2. ADMIRALTY—COSTS—APPEAL.
   When the libelant has not properly presented his case by pleadings and evidence until after it has reached the appellate court, he ought not to recover costs.

Admiralty Appeal.

PARDEE, J. It being conceded in this case that the loss was from leakage and breakage, from which the carrier was released by his contract, unless his negligence or misconduct co-operated in the loss, the burden of proof is upon the shippers to show such contributing or co-operating negligence. See *National Bureau of Engraving* v. *The New Orleans*, (decided in this circuit, December, 1885,) 26 Fed. Rep. 44.

As the case was tried in the district court, this burden of proof was not assumed by the shippers, and that court very properly dismissed the libels. Since the case came to this court, the libelant and intervenor have amended their libels, charging "that, after the barrels of oil and beef had

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

been stowed, covering the bottom of the vessel around the foremast and center case, said vessel took in a large quantity of cement and plaster in barrels from aft the place were the beef and oil was stowed, and caused them to be rolled forward to their place of stowage, forward of the foremast; and in so doing rolled them over and across the barrels of beef and oil, without protecting said beef and oil by planks or otherwise, and, by such negligent rolling and handling of the cement and plaster, the barrels of beef and oil lying below were damaged and broken, causing their contents to leak out, and lose, waste, and spoil the contents thereof; that the barrels of cement and plaster weighed 300 and 400 pounds each, and, in rolling over said unprotected beef and oil barrels, thumped and bruised them, springing the staves, bulging out the heads, and breaking the chimes; that such manner of loading was negligence for which the respondent is liable;" and, to support the case as thus made, a quantity of additional evidence has been taken.

Improper stowage is eliminated from the case, and the case is one where the libelants claim improper handling in stowing, and the respondent claims insufficient packages and perils of the sea. The libelants show, by the testimony of the master who superintended the storage, that beef and oil were stowed forward, in the bottom of the ship, with a dunnage of boards and firewood; that on the beef and oil were stowed three tiers of barrels cement and plaster. "There were no planks placed on the bilge of the barrels during the loading of the other cargo. In loading this freight after the beef was stowed, it was necessary to roll the freight over these barrels to get to its proper place, sometimes over the bilge of the barrels, and sometimes over the ends. There is always more or less dunnage scattered around over the cargo. It would touch the dunnage, and might touch the bilge, or might touch the chimes. There were two hundred barrels of cement. The average weight of a barrel of cement is 310 pounds."

As to the condition of the barrels and half barrels of beef, when delivered, Schneider, libelant, says:

"The most of the consignment was badly damaged, the heads of barrels bulged out, and staves mashed in, causing the beef to spoil by letting the brine out. Some of the barrels were part empty, having bulged out. A great many of the chimes and staves were broken. * * * All these barrels were good, strong barrels, and were not old barrels."

Flake, libelant, says:

"The barrels were some mashed flat; some had hoops off; some had staves broken. The barrels were good as any ordinary beef barrels."

Gibbs, master, says that all the hoops were on the beef barrels when unloaded, but he saw one barrel with the chime broken.

As to the oil barrels, Smith, intervenor, says:

"One barrel had two staves crushed in on the side. The other barrel had the chime broken in, and the hoop broken off. One half of the barrels of my consignment were thickly coated with cement."

E. A. Walker testifies:

"These two were second-hand old kerosene oil barrels, and were the barrels out of which the oil had leaked. Some of the hoops were rusty, and had burst from age. On one barrel the chime was gone."

Buchan and Cormille, coopers, examined these oil barrels, and say they were stout, suitable, etc.

The evidence of Schneider, Beers, Buchan, Cormille, and Smith is to the effect that the damage could have been done to the oil and beef barrels by heavy weights rolled over them, or dropped on them, without care having been taken to support them, or to distribute the weight. The respondent produces some evidence that the barrels, both for oil and for beef, were old and unsuitable, with rusty hoops and patched staves; but there is no difficulty, under all the evidence in the case, in concluding that this defense is wholly untenable.

The remaining defense, that the damage to the barrels was caused by the stormy weather encountered on the voyage, presents more difficulty. There is no doubt the bad weather was experienced, and that the ship rolled and pitched; but all this will not account for the damage, unless there was a shifting of the cargo, or such a moving of the cargo, and working out of the dunnage, as to leave the injured packages to batter or be battered; for both parties claim that the cargo was well stowed, and it must be remembered that chimes and hoops and staves were broken.

The testimony on this point of shifting cargo, or packages breaking loose, is as follows:

Murray, mate, says:

"When I examined the cargo before unloading, I could not notice that it had shifted any. There were no marks to show that the barrels had been thrown out of place. I did not notice any marks that the cargo had received, —any damage from the rough weather. What I saw of the cargo was well packed."

Gibbs, master, says:

"From my knowledge, the rolling of the vessel would cause the cargo in the hold to work more or less. A vessel could not be loaded in such a way as that the cargo could be prevented from working in the hold, altogether, in such weather as we had on this last trip. Such weather as we had on this last trip would cause barrels of beef or oil, stowed in the bottom of a ship, to start their hoops or heads. Sometimes a barrel will work entirely around,— work bung down. A barrel will sometimes move a very little at a time,—a half an inch; but, by constant working, it will move completely around, and be bung down. In unloading the cargo, I could see where it had shifted a little; just enough to perceive it."

Hutchings, port-warden, says:

"I went down the hold, and found the schooner had damaged considerable cargo, and I made at that time rather more than the usual inspection, from having seen this damage. I made a general survey of everything that I could see that was in sight, of all classes of cargo, and found everything well stowed, well dunnaged, and well quoined. The cargo showed that the vessel had labored hard, for some of the cargo was displaced. It is impossible to stow a ship with general cargo that passes through what we call a gale so that the cargo will not move, and the dunnage will not work out. I saw where some of the cargo had moved and some of the dunnage had dropped out."

This evidence does not sufficiently account for the damage to the oil and beef barrels, as shown by Schneider, Smith, and others, nor can I say that the evidence as to improper handling in New York is clear enough to account for the damage. But the impression left on my mind, after a careful reading and re-reading of all the evidence, and after mature deliberation, is clear and strong that the claimant does not account for the damage to the goods, and that the libelants and intervenors do, by the weight of evidence, show it to have been caused by co-operative negligence of the carrier. A decree should go for the libelants, Flake & Co., for $384.04, and for the intervenors, Smith & Bro., for value of the oil, $50.

The libelants and intervenors, not having fully presented their case, (pleadings and evidence,) until after the appeal to this court, ought not to recover costs.